# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

MARVIN LIVINGSTON,
ADC #127661                                                                                                 PLAINTIFF

5:09-cv-00227-JMM-JTK

ED ADAMS, et al.                                                                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District
        Judge (if such a hearing is granted) was not offered at the
        hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

An evidentiary hearing was held in this case before the Court on April 7, 2011. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

## I.      Introduction

Plaintiff, a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging failure to protect and excessive force by Defendants while he was incarcerated at the W. C. "Dub" Brassell Detention Center (Jail) in January, 2009. Specifically, Plaintiff alleges Defendant Adams attacked and choked him while Defendants Hunter, Johnson, and Dolphin watched. Plaintiff requests monetary relief from the Defendants.

## II.     Factual Findings

### A.     Hearing Testimony and Exhibits

#### 1.     Plaintiff Marvin Livingston

Plaintiff testified that he was away from the Jail for a court appearance on January 26, 2009, and that when he returned to the Jail that evening, he found that the upper tier in which he was housed had been placed on lockdown due to an altercation involving some inmates. The next morning while Defendant Hunter was serving breakfast, Plaintiff and a few other inmates confronted her about being included in the lockdown when they were not present during the altercation.

Defendant Adams, the chief of security, came into the area at that time and Plaintiff asked him about the lockdown. The two exchanged words and Defendant Adams instructed Defendant Officer Johnson and non-party officer Holloway to escort Plaintiff, without cuffing him, to his cell to get his property and then to take him to isolation. After Plaintiff retrieved his property from his cell, Defendant Adams attacked him, grabbed him by the neck and choked him. The two then fell into a wooden table and onto the floor, where Adams continued to choke Plaintiff for about twenty seconds. During this time other deputies and the Defendants stood and watched the altercation.

Plaintiff suffered several scratches and submitted a sick call request complaining about his elbow hurting him. A nurse examined him on January 29, 2009 and prescribed Ibuprofen. Plaintiff wrote grievances about the incident but did not receive a response, until he wrote a grievance in which he apologized to Captain Adams for his behavior, and claimed to suffer from mental illness. Defendants' Ex. 5. During the Hearing, Plaintiff testified he wrote this grievance because he had not received responses to his previous grievances and apologized only in an attempt to obtain an answer.

Plaintiff testified that he was transferred to the ADC in November, 2009, and that in May, 2010, he was examined at the ADC and found to have a chipped bone in his elbow. He received a script at that time for one-arm duty for seven days.

### 2.     Patrick Haltiwanger

Former fellow inmate Patrick Haltiwanger, now incarcerated at the North Central Unit of the ADC, testified at the hearing by telephone. Haltiwanger stated he participated with Plaintiff and other inmates on January 27, 2009, in complaining to Defendants Hunter and Adams about the lockdown. He stated Adams told him to return to his cell and then told guards Holloway and Johnson to escort Plaintiff to his cell to get his property. Upon Plaintiff's return, Adams grabbed Plaintiff as he exited the cell area, and tried to throw him to the ground and choke him. After the two fell on to the table, officers waved Haltiwanger and other inmates away from the doorway and he did not see what transpired after that. Haltiwanger also stated Adams exhibited an attitude and Plaintiff was not aggressive or resistant with Adams.

### 3.     Angela Randall

Angela Randall is employed as a registered nurse at the Jail. She examined Plaintiff after the incident, in response to the sick call request submitted on January 27, 2009. Defendants' Ex. 7. She noted scratches on his neck and hand which were superficial, not bleeding, and consistent with a fingernail scratch. She also examined his elbow and did not see swelling or discoloration or any mobility difficulties by the Plaintiff. She stated if the elbow was chipped at that time, it is possible that there would not have been swelling or bruising. She also stated Plaintiff did not submit any additional requests to see the doctor after that time.

### 4. Ernestine Murray

Ms. Murray has been a deputy at the Jail for three years. She did not recall the January 27, 2009 incident between Plaintiff and Defendant Adams, but did remember seeing the upended table and the guards escorting Plaintiff to the isolation area. She stated Plaintiff always gave them (guards) a problem while at the Jail, and that he would talk back to the guards, scream, and holler at them.

### 5. Defendant Sandra Dolphin

Corporal Dolphin worked at the Jail on January 27, 2009, and was walking through the multipurpose room of the Jail when she saw Defendant Adams grab Plaintiff by the front of the jumpsuit. As she walked toward another area of the Jail, she heard some commotion and when she turned around she saw Adams and Plaintiff on the ground, with a broken plastic table beside them. The two were only on the ground for a few seconds before they got back up. She later wrote a statement recounting what she saw. Defendants' Ex. 4.

### 6. Defendant Cynthia Hunter

Lieutenant Hunter also worked at the Jail on the date of the incident. She was serving breakfast to inmates when Plaintiff and others approached her to complain about the lockdown. Although she professed to know nothing about the lockdown, the inmates kept bothering her about it; she eventually summoned Defendant Adams. Plaintiff acted loud and obnoxious about the situation and Adams told Plaintiff to retrieve his property from his cell. When Plaintiff returned, he walked toward Adams in an aggressive manner and Adams grabbed him by the front of the jumpsuit and took him out of the cell area where they fell to the floor, into a plastic table**.** After the two fell, Adams picked Plaintiff up by his jumpsuit and placed him against the wall; Adams then

told Defendant Johnson and Officer Holloway to take Plaintiff to the isolation unit. She also wrote a report about the incident. Defendants' Ex. 2.  She stated she did not see Adams choke Plaintiff but remembers Plaintiff acting aggressive, loud and obnoxious.

### 7. Defendant Ed Adams

Captain Adams stated he had just arrived to work on January 27, 2009 and was walking to his office when he was approached by Defendant Hunter who stated some of the inmates had a problem and needed to talk.  Plaintiff cussed at Adams and when he would not stop, Adams told officers Holloway and Johnson not to cuff Plaintiff and to escort him to his cell to get his property and then to the isolation area.  As Plaintiff came down the stairway from his cell area, he cussed and held a blanket and other property in his arms, and walked toward Defendant in an aggressive manner.  He demonstrated in court the manner in which Plaintiff approached him.  Defendant stated he was unsure if Plaintiff had something rolled up in the blanket which he could use as a weapon against him, so he grabbed Plaintiff by the jumpsuit and they fell off-balance into a table and onto the floor.  He immediately stood up after no more than three seconds and grabbed Plaintiff and put him up against the wall in order to subdue him.  He then told the guards to take Plaintiff to the isolation area.

He stated the force he used with Plaintiff was appropriate and necessary in order to gain control over Plaintiff, and he denied choking Plaintiff or touching any part of Plaintiff other than the front of his jumpsuit.

### 8. Video (Defendants' Ex. 8)

Defendants presented a video of a portion of the incident which was captured by a camera located on the end of a taser.  Defendant Adams did not know who handled the taser at the time.

The video begins when Adams and Plaintiff are on the floor, and shows the broken or upended plastic table behind them. Adams grabbed Plaintiff by the front of the jumpsuit and shoved him up against the wall, and then shoved him toward two other guards who escorted Plaintiff out of the room.

**III.   Legal Conclusions**

    **A.   Excessive Force**

It is not completely clear whether at the time of the incident Plaintiff was incarcerated as a pretrial detainee or a post-conviction inmate. Claims filed by pretrial detainees are analyzed under the 14th Amendment due process clause. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Courts look to whether the Defendants' actions were objectively reasonable under the circumstances. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). In Moore v. Novak, 146 F.3d 531, 535 (8th Cir. 1998), the Court held, "[t]he question for the [factfinder] is whether, judging from the perspective of a reasonable officer at the scene – the totality of the circumstances justifies the use of the force used." (quoting Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990). If Plaintiff was incarcerated post-conviction, however, the Court must determine if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

In this particular case, regardless of whether Plaintiff was a pretrial detainee or post-conviction inmate, no credible evidence was presented that Defendant Adams used excessive force against Plaintiff. Although Plaintiff claims Adams attacked him without cause, choked him, and caused him to chip a bone in his elbow, the Court does not find that the evidence supports his claim. Plaintiff admits having had words with Defendants Hunter and Adams prior to the incident. Several

witnesses also testified that Plaintiff caused problems often at the Jail and acted in an aggressive manner toward guards.  Plaintiff presented no evidence to support his claim that Adams choked him for twenty seconds, and Defendants Hunter and Dolphin also testified that Adams grabbed Plaintiff by the jumpsuit in an effort to subdue him.  Defendant Adams testified Plaintiff approached him aggressively and that he grabbed Plaintiff by the jumpsuit only in an effort to subdue an assumed attack by Plaintiff.   Plaintiff's apology to Captain Adams admits his aggression, despite his claimed motives for the apology.   Defendants' Ex. 5.   Defendants' testimonies also were supported by the incident reports which they filed.  See Defendants' Exs. 1-4.

   The video of the incident does not cover the initial contact between Plaintiff and Defendant Adams.  It does show Defendant Adams grabbing Plaintiff by the jumpsuit, shoving him up against the wall, and then shoving him toward guards who escorted him to isolation.  While Defendant Adams' conduct may have been aggressive, considering the circumstances the Court finds no evidence that he acted maliciously or sadistically to cause harm.  Plaintiff also presented no evidence of physical harm, other than superficial scratches.  Although he testified that he was treated at the ADC in May, 2010, with a chipped bone in his elbow, that diagnosis occurred at least fourteen months after the incident, and Plaintiff provided no evidence to support a finding that the January 2009 incident was the cause of the chipped bone.

   Finally, the Court notes that, although Plaintiff maintained in his Complaint and his testimony that the table he fell on was a wooden table, the Defendants' testimony and the video establish that it was a plastic table which was upended during the incident.

   Plaintiff also attempted at trial to establish a constitutional violation by Defendant Adams with respect to his order that Plaintiff not be cuffed prior to being escorted to his cell to obtain his

8

property.  Defendants testified that Jail policy required that detainees be cuffed when transported outside of their cells.  Defendant Adams also testified that he ordered that Plaintiff not be cuffed, because he was directing Plaintiff to retrieve his own property prior to his placement in isolation.  Adams further testified his actions were part of an effort to prevent allegations of lost or stolen property by Jail employees.   Regardless, violation of an institution policy or regulation does not set forth a constitutional violation.  See Williams v. Nix, 1F.3d 712, 717 (8th Cir. 1993).

**B.     Failure to Protect**

Having found no credible evidence to support Plaintiff's claim of excessive force against Defendant Adams, Plaintiff cannot maintain a claim of failure to protect against defendants Dolphin, Hunter, and Johnson.   Plaintiff presented no evidence to show these Defendants were aware of facts from which an inference could be drawn that Plaintiff was subject to a substantial risk of serious harm.  See Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998).

**III.    Conclusion**

In conclusion, the Court finds that Plaintiff did not prove his claims against Defendants by the preponderance of the evidence, and that Defendants should have judgment against Plaintiff on his claims against them.   Accordingly,

IT IS, THEREFORE, RECOMMENDED that Defendants have judgment against Plaintiff and that this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 14th day of April, 2011.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE